CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 10 2010
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DICAM, INC., <br>     Plaintiff, <br><br> v. <br><br> CELLCO P'SHIP d/b/a <br> VERIZON WIRELESS; <br> AT&T MOBILITY CORP. f/k/a <br> CINGULAR WIRELESS CORP.; <br> AT&T MOBILITY, L.L.C. f/k/a <br> CINGULAR WIRELESS, L.L.C.; <br> MOTOROLA, INC.; <br> PERSONAL COMMUNICATIONS <br> DEVISES, L.L.C. f/k/a UTSTARCOM; <br> PALM, INC.; <br> SPRINT SPECTRUM, L.P.; <br> NEXTEL OPERATIONS, INC., <br>     Defendants. | Civil Action No. 3:08cv00053 <br><br> <u>MEMORANDUM OPINION</u> <br><br> By: Hon. James C. Turk <br> Senior United States District Judge |

This case comes before the Court on Defendant Palm, Inc.'s ("Palm") Motion for Summary Judgment (Dkt. No. 181). Plaintiff Dicam, Inc. ("Dicam") brought this action under United States Code, Title 35, Section 1, *et seq.*, alleging patent infringement by numerous defendants. Dicam seeks damages no less than a reasonable royalty, interests and costs, treble damages and attorney fees, and asks the Court to find willful infringement on the part of the defendants and to find that the action is exceptional under United States Code, Title 35, Section 285. Plaintiff responded to Palm's Motion for Summary Judgment with a Memorandum in Opposition (Dkt. No. 184), and Palm replied (Dkt. No. 188). The Court heard oral argument on August 9, 2010, and the matter is now ripe for decision. For the reasons set forth in this Memorandum Opinion, Defendant Palm's Motion for Summary Judgment is **GRANTED**.

**I. Background**

At issue here is the invention claimed in U.S. Patent Number 4,884,132 (the "132 patent"). The inventors[1] filed a patent application on November 25, 1986, for a hand-held device that could take a picture and send both the picture and identifying information to a remote location. The creation of this invention was rooted, according to Dicam's Memorandum in Opposition to Palm's Motion for Summary Judgment, in one of the inventor's desire to enhance his daughter's safety when she began college. In the patent application, Dicam described the invention, stating:

> The personal security system transmits a picture of an object, such as a criminal suspect, and the identification of a portable transmitter, such as the social security number of the user, to a receiver at a remote location. Time of transmission is recorded. If a crime occurs, the time, picture of the suspect, and identification of the victim are obtained from a recorder at the receiver. A potential victim of a crime points his portable personal security unit at a criminal suspect and presses an activating switch. The unit senses available light on the object and provides a flash if required. At the same time focusing an aperture control is performed and an image of the object is admitted to an image recorder which is a focal plane sensor array. Image data from the focal plane sensor array is processed in an image data processor and the processed image data is fed to a cellular communication transmitter for transmitting to the remote receiving station. An audio pickup at the portable unit is connected to the receiver for transmitting voice communications over the transmitter. By pointing the device at a suspect and pressing a button, a person makes a permanent record of an image.

Application for United States Letters Patent for Personal Security System by James A. Morris, Terry F. Morris, & Frank O. Birdsall, at 1 (Nov. 25, 1986). On November 4, 1987, the Patent Office rejected the eighteen claims in the application, based on the Camras prior art. In the Office Action issued by the Office, the Examiner stated that Camras "discloses a personal hand-held camera (which can be used for security purposes), which transmits both image and

---

[1] The patent application was filed by the inventors: James Morris, Terry Morris, and Frank Birdsall. The inventors, who are also officers of Dicam, assigned the patent to Dicam on July 13, 2007.

information data to a remote receiving location." Examiner's Office Action, at 3 (Nov. 4, 1987). Dicam filed amendments to several of its claims on February 4, 1988, and also filed arguments to distinguish its invention from Camras. The patent was approved on November 28, 1989, and is described by Dicam in the complaint as a patent "for a personal security system including a handheld unit." Compl. at 2. The patent expired on November 28, 2006.

Defendant Palm is a manufacturer of cellular smartphones. Dicam claims that six models of the Palm smartphones, all of which have the capacity to capture and store an image, and to transmit the image through email or text messaging, infringe on the 132 patent. All of the smartphones require multiple steps to capture and then transmit a still image. Although Palm admits that some of the steps can be combined, none of the phones can be programmed by the user to both take an image and transmit it with the push of a single button.

**II. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c) (2010). In determining whether summary judgment is appropriate, the court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Nevertheless, the courts look to the affidavits and other specific facts to determine whether there is a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Summary judgment is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." TechSearch, L.L. C. v. Intel Corp., 286 F.3d 1360, 1369 (Fed. Cir. 2002). The Federal Circuit has explained:

> A patent infringement analysis involves two steps: 1) claim construction; and 2) application of the properly construed claim to the accused product. The first step, claim construction, is a matter of law that [the] court reviews without deference. Whether the accused device contains an element corresponding to each claim limitation or its equivalent is a question of fact, which, on summary judgment, is a question we review to determine whether a material factual issue remains genuinely in dispute.

Id. at 1369–70 (citations omitted). Here, the facts are undisputed. Therefore, the issues involve only claim construction.

**III. Analysis**

There are two issues to consider in this case. First, is the term "personal security system" a limitation of the claim? Second, does Dicam's patent comprise an invention that operates with the push of only a single button?

A. The Term "Personal Security System" is a Claim Limitation

Palm argues that the term "personal security system" is a claim limitation. Palm points to the claim preambles, the prosecution history, and the patent specification in an effort to support this argument. Dicam argues, however, that the term "personal security system" is not a claim limitation on the 132 patent. Rather, Dicam claims, "personal security system" is merely a shorthand description of the entire invention.

1. Effect of the Preamble on the Claim Construction

"Generally, the preamble does not limit the claims." Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1346 (Fed. Cir. 2002) (citation omitted). "However, the preamble may be limiting 'when the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention.'" Id. (quoting Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 620 (Fed. Cir. 1995)). "Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is

determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history." Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc., 98 F.3d 1563, 1572–73 (Fed. Cir. 1996). "'[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention.'" Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1370 (Fed. Cir. 2003) (quoting Catalina Mktg.Int'l Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808–09 (Fed. Cir. 2002) (citing Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1375 (Fed. Cir. 2001))). However, "preambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of the structure. . . . [S]tatements of intended use or of asserted benefits in the preamble may, in rare instances, limit apparatus claims, but only if the applicant clearly and unmistakably relied on those uses or benefits to distinguish prior art." Catalina Mktg., 289 F.3d at 809 (citations omitted).

In this case, the preamble is a claim limitation. The term "personal security system" is not merely a purpose for which the invention can be used; rather, the invention *is* the personal security system. The term is included in the preamble of each independent claim in the patent, and is referred to in each dependent claim. When looking at the preamble in light of all the facts of the case, including the prosecution history and the specification of the patent, it is clear that the device here is a personal security system.

2. The Prosecution of the Patent

Defendant Palm argues that the prosecution history of the 132 patent supports the

5

argument that the term "personal security system" is a limitation. In particular, Palm focuses on Dicam's effort to distinguish the device from prior art, specifically the Camras prior art. In response, Dicam argues that the responses proffered after the patent application was originally rejected show that the inventors focused on the preprogrammed identification information that would be stored in their device and which would be automatically transferred in the event of operation by the user.

Dicam is correct in its argument that the inventors responded to the original patent rejection by emphasizing the device's preprogrammed identification information. However, this emphasis was made in the context of distinguishing the device—a personal security device that could easily be used to capture an image and transmit preprogrammed identification information—from Camras prior art—a camera that could capture an image and transmit information. In emphasizing that their device stored identification information, the inventors were explaining why their invention was more practical as a personal security device, whereas the Camras prior art was not. In the remarks in their response, the inventors explained that the preprogrammed identification feature of the hand-held unit is "essential to the invention in that it allows instant identification of the potential victim." In re Application of James A. Morris et a.l, Sercial No. 934, 836, Response to the Commissioner of Patents and Trademark, at 4 (Feb. 4, 1988). If the device is merely a hand-held unit that captures images and transmits them, for purposes of non-specific communication rather than personal security, the preprogrammed identification feature is useful but not essential. In focusing on their device's ability to store identification information, the inventors were emphasizing the fact that their device was a personal security system.[2] The Federal Circuit has said that "clear reliance on the preamble

---

[2] This conclusion is further buffered by Dicam's own Opposition to Palm's Motion for Summary Judgment, wherein Dicam introduced its argument by explaining that the device was intended to

during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." Catalina Mktg., 289 F.3d at 808–09 (citations omitted). In Invitrogen Corp. v. Biocrest Mfg., 327 F.3d 1364 (Fed. Cir. 2003), where an inventor added language regarding "improved competence" when amending their patent, the court found that the inventor could not then disavow "improved competence" as a claim limitation. Id. at 1379. Although the inventors here did not add the term "personal security system" in the amendment they offered to distingush their invention from Camras prior art, they emphasized the concept of the personal security system when they added language to differentiate between Camras and their personal security device.

3. Effect of the Specification on the Claim Construction

In looking at the patent as a whole, the Court also looks to the patent specification to determine whether the preamble term "personal security system" limits the claim. The Federal Circuit has said:

> No litmus test can be given with respect to when the introductory words of a claim, the preamble, constitute a statement of purpose for a device or are, in themselves, additional structural limitations of a claim. To say that a preamble is a limitation if it gives "meaning to the claim" may merely state the problem rather than lead one to the answer. The effect preamble language should be given can be resolved only on review of the entirety of the patent

---

be used for security. Specifically, Dicam stated, "[i]n the mid-1980s, one of the inventors, James Morris, wanted his daughter who was leaving home for college to have something that would enhance her safety on campus. Mr. Morris, his brother, Terry Morris, and their colleague, Frank Birdsall, realized that digital imagery technology (such as that available for digital cameras) and cellular communication networks (like those used with cellular telephones) could serve such purpose." Pl.'s Br. in Opp. at 1. Although a mere possible or intended use is insufficient to limit a claim, personal security is more than a mere possible or even intended use here—it is the very invention itself. It is clear that the inventors here that did not work to create a device that could capture an image and transmit it and then suggest personal security as one possible use of the device. Rather, they worked to create a personal security system. The device covered by the 132 patent is the ultimate functionality of that objective.

7

> to gain an understanding of what the inventors actually invented
> and intended to encompass by the claim.

Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1257 (Fed. Cir. 1989). In this case, the specification of the 132 patent, as well as other language in the patent, offers the clearest support for a finding that the device is a personal security system. The Background of the Invention offers the invention as a device to fill a void in the market for personal security systems. The Background begins, "Personal security systems are increasingly in demand," and offers this device as a solution to meet such demand. U.S. Patent No. 4,884, 132 (issued Nov. 28, 1989). The Summary of the Invention repeatedly refers to the invention as "the preferred personal security system" or "a preferred personal security system." The specification does not refer to personal security as merely one possible use for the invention. Instead, the specification refers to the unit itself as a personal security system, and offers no other potential uses for the device.

In looking at the patent as a whole, including not just the claim preambles, the Court is of the opinion that the term "personal security system" is a limitation of the 132 patent. The invention at issue here is a personal security system. Use as a personal security system is not merely a possible purpose of the invention, nor is the term "personal security system" merely a shorthand description; rather, the device is itself a personal security system.

B. A Single-Button Push is a Necessary Component of the Device

Palm argues that the 132 patent defines a "personal security system" as a device which operates with the push of a single button. Thus, according to Palm, a user is able to both activate the device to take a picture and transmit that picture and identifying information by pushing just one button. Based on this argument, Palm asserts that its smartphones do not infringe on patent 132 because the user of the phones must complete five separate steps in order to take a picture

and transmit it to a remote third party. In response, Dicam argues that patent 132 is not limited only to devices that operate with a single button-push. Dicam claims that no where in the patent application or in patent 132 is it stated that the device requires just one button-push. The Court finds that regardless of whether the invention of patent 132 is necessarily a personal security system or is merely a unit that can be used as a personal security system, the single-button operational capacity is an essential element of the unit. The claim, when properly construed, requires that the device operate with the push of a single button.

Dicam argues that the patent is not limited to devices which operate with a single button push, and claim that no where is the patent so limited. The prosecution history belies this argument. In their remarks in response to the patent rejection, the inventors explained that their invention was distinguishable from prior art because the device stores the user's identification information. They went on to explain that this identification information, along with the digital image recorded and the time, can be "transmitted with the push of a single button." In re Application of James A. Morris et a.l, Sercial No. 934, 836, Response to the Commissioner of Patents and Trademark, at 5 (Feb. 4, 1988). This was important because this ease of use would allow "the user/potential victim to use his time to consider alternative plans of action." Id.

Although Dicam is correct that the patent itself never explicitly uses the term "single-button push," there is no mention in the patent of multiple buttons or multiple steps that would be necessary in order to use the device. The Abstract, in explaining how the device would be used, refers only to one button: "A potential victim of a crime points his portable personal security unit at a criminal suspect and presses an activating switch." U.S. Patent No. 4,884, 132 (issued Nov. 28, 1989). This same line is repeated in the Summary of the Invention. Id. The Summary of the Invention also explains that a master control function unit is connected to the start button,

and that the device's units are all connected to the master control unit. "The light sensing, the flash illumination, the lens control, the aperture control, and the image recording function, the image processing function, and the transmitting function operate upon pushing a start button." Id.

The patent diagram also supports Defendant Palm's argument. The diagram shows two buttons. The first of those is denoted by number 72. According to the Detailed Description of the Drawings, this is a status check button. Pushing this button allows the user to monitor the status of the unit and its various capabilities in order to ensure that the device remains in proper working order. Id. The second button is denoted by number 12. This is a start button, which is connected to a master control function, which thereby controls the unit's electric power source, illumination unit, light sensor unit, projection lens control unit, aperture control unit, image recording unit, image processing unit, and cellular communication unit. According to Claim 3 of the patent, the master control function, which is operated by pushing the start button, controls all of the capabilities of the unit necessary to power the device, capture and save an image, and transmitting the image to a remote cellular receiving station. U.S. Patent No. 4,884, 132 (issued Nov. 28, 1989). When combined with the prosecution history, which explains that the user is able to transmit both an image and preprogrammed identification information with the push of a single button, this claim must mean that a user can fully utilize the device merely by manipulating the start button. In other words, the device operates with the push of a single button.

Palm's smartphones have the capability to capture an image and to transmit the image, along with the user's identification information, including cellular phone number, to a third party. However, as declared by Robert M. Katcher, a Palm product line manager, the

smartphones "do not have imaging and communications features for the instantaneous capture and transfer of an image by pushing a single button." (Aff. of Robert M. Katcher ¶ 5.) Instead, the smartphones have a "five-step process for taking and sending a picture."[3] (Id. ¶ 9.) Some of these steps also require multiple sub-steps.[4] Mr. Katcher does admit that some of the Palm smartphones have an application that allows users to upload pictures to a particular website using an abbreviated process; however, this process still requires at least three separate steps.[5] Id. Dicam does not dispute that Palm's smartphones require multiple steps in order to capture an image and transmit the image and identifying information to a third-party. The multiple steps required mean that the smartphones are impractical for use as personal security systems. As Dicam noted in the response to the patent rejection, a potential victim needs to be able to capture an image and transmit it quickly in order to respond to the issue at hand. Efficiency is also important so that a potential victim may transmit this information without placing himself at

---

[3] The five-step process requires the following:
1. "Enable the camera application by choosing the camera function from one of the many choices (e.g. contacts, calendar, email, web browser)."
2. "Take a picture by pressing the "shutter" button."
3. "Enable the messaging application by choosing either email or MMS options."
4. "Address the message to the intended recipient—either by typing an email address or phone number or selecting an entry from the pre-saved contacts."
5. "Send the message by pushing the "send" button."
(Aff. of Robert M. Katcher ¶ 9.)

[4] For example, in order for a user of the Palm smartphone Treo 680 (GSM) to complete step one and enable the camera application, the user must complete the following steps:
1a. "Press the "applications" button."
1b. "Highlight the Camera Application."
1c. "Press the "center" button to select the application."
Id. at 3.

[5] In order to capture an image and upload it to the Facebook website using one of these Palm smartphones, the user completes the same steps one and two as detailed in note 3, above, and then performs a third step which both enables the messaging or transmitting application and sends the image. Step four as detailed above, wherein the user addresses the message that contains the image, is not necessary when using this particular application. Id.

heightened risk, a point that Dicam notes in the Background of the Invention. U.S. Patent No. 4,884, 132 (issued Nov. 28, 1989). Thus, Palm has clearly not infringed the 132 patent.

IV. CONCLUSION

For the reasons stated above, the Court finds that the invention in the 132 patent is a personal security system, and that, regardless of whether the invention is a personal security system, the device operates with the push of a single button. Defendant Palm's smartphones, which are not personal security systems and which cannot both capture and transmit and image with the push of a single button, therefore do not infringe the 132 patent. Thus, Palm is entitled to judgment as a matter of law. Accordingly, Palm's Motion for Summary Judgment is **GRANTED**. The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to counsel for the parties.

**ENTER:** This _10th_ day of September, 2010.

/s/ James C. Turk
Senior United States District Judge